# Vile, Appellant, *v.* Pennsylvania Railroad Co.

*Negligence—Railroads—Cleaning locomotive boilers—Smoke—Cinders—Injury to adjoining property—Customary method of cleaning—Duty to avoid nuisance—Case for jury.*

1. In an action against a railroad company to recover damages for injuries to plaintiff's land resulting from the cleaning of locomotive boilers by means of compressed air, causing smoke, cinders, soot, ashes and greasy substances to fall upon and ruin plaintiff's plants and vegetables, the fact that the method of cleaning the boilers was that in general use by other railroad companies will not prevent a recovery where it appears that there were other practicable means of cleaning boilers by the use of which the injuries complained of could have been avoided.

2. In such case a verdict for the plaintiff will be sustained where plaintiff's expert witness testified that the nuisance could be avoided by brushing the tubes instead of cleaning them with compressed air, that this method was effective and had been in use by railroads for seventy years, and that the compressed air method was later adopted to save time and expense; or could be avoided by conveying the noxious fumes through a chimney to a high elevation.

*Evidence—Witness—Method of cleaning boilers—Locomotive boilers—Experts—Competency.*

3. In an action against a railroad company to recover damages for injuries to plaintiff's land resulting from the cleaning of locomotive boilers by means of compressed air, an expert witness called by plaintiff to testify as to the practicable means of cleaning boiler tubes without causing the deposit of objectionable substances, properly qualified where he testified that he had been an engineer for thirty-five years, that he had devoted himself exclu-. sively to the study of power and combustion, and had experience in doing away with the evils of soot, smoke and gas, which included the installation of apparatus for distributing escaping smoke so that it could do no local injury; that while he had had no experience with locomotive boilers, yet there was no difference between locomotive boilers, and other boilers in regard to the soot, smoke and gas, and such statement was not contradicted by the only witness called by defendant.

Argued Jan. 20, 1914.   Appeal, No. 291, Jan. T., 1913,

by plaintiff, from judgment of C. P. No. 4, Sept. T., 1909, No. 1158, non obstante veredicto in case of Charles M. Vile v. The Pennsylvania Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for injuries to plaintiff's land caused by the discharge of cinders, smoke, etc., from defendant's locomotives. Before WILLSON, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $5,500; the court subsequently entered judgment for defendant n. o. v. Plaintiff appealed.

*Error assigned* was the judgment of the court.

*J. Hibbs Buckman,* of *Buckman & Buckman,* for appellant.—The plaintiff's expert was a competent witness: Sporson v. Philadelphia & Reading Railway Co., 54 Superior Ct. 30.

The nuisance was avoidable: Stokes v. Pennsylvania Railroad Company, 214 Pa. 415 (63 Atl. Repr. 1028); Baltimore R. R. Co. v. Fifth Baptist Church, 108 U. S. 317; Cogswell v. N. Y., Etc., R. R. Co., 103 N. Y. 10; Garvey v. Long Island R. R. Co., 159 N. Y. 323; Spring v. Delaware, Etc., R. R. Co., 88 Hun. (N. Y.) 385; Chicago, G. W. R. R. Co. v. Church, 102 Fed. Rep. 85 (Court of Appeals); Terminal Company v. Jacobs, 109 Tenn. 727; Smith v. Midland & Lancashire, Etc., R. R. Co., 37 L. T. Repr. N. S. 224; Pennsylvania R. R. Co. v. Angel, 41 N. J. Eq. 316 (7 Atl. Repr. 432); Kuhn v. Illinois Central R. R. Co., 111 Ill. App. 323; Tucker v. Vicksburg S. & P. Ry. Co., 51 So. Repr. 689; Elliott on Railroads, 2d Edition, 1056 A; Cogswell v. New York, New Haven and Hartford Railroad Company, 103 New York Reports, 10; Spring v. Delaware, Lackawanna and Western Railroad Company, 95 N. Y. Supreme Court Reports 385; Pennsylvania Railroad Company v. Angel,

41 N. J. (Eq.) 316; 7 Atl. Repr. 432; Terminal Co. v. Jacobs, 109 Tenn. 727; Garvey v. Long Island Railroad Company, 159 N. Y. 323; Chicago, Great Western Railway Company v. First Methodist Church, 102 Fed. Repr. 85.

*John Hampton Barnes,* for appellee.—The use of the property in the manner complained of was lawful: Boyd v. Harris, 176 Pa. 484; Cleveland & Pittsburgh R. R. Co. v. Speer, 56 Pa. 325; Struthers v. Dunkirk, Etc., R. R. Co., 87 Pa. 282; Borough of Millvale v. Evergreen R. R. Co., 131 Pa. 1; Howley v. Central Valley R. R. 213 Pa. 36; Pennsylvania R. R. Co. v. Lippincott, 116 Pa. 472; Dooner v. Penna. R. R. Co., 142 Pa. 36; Philadelphia & Reading R. Co. v. Pennsylvania Schuylkill Val. R. R. Co., 151 Pa. 569; Frankford & Bristol Turnpike Co. v. Philadelphia & Trenton R. R. Co., 54 Pa. 345; Canavan v. Oil City, 183 Pa. 611; Rocap v. Telephone Co., 230 Pa. 597; Kingsley v. D., L. & W. R. R., 81 N. J. Law 536.

There was no evidence which warranted the court in submitting to the jury the question whether it was the duty of the defendant to adopt either of the methods for remedying the alleged nuisance suggested by plaintiff's witnesses: Richard's Appeal, 57 Pa. 105; Kilbride v. Carbon Dioxide & Magnesia Co., 201 Pa. 552; Bunting v. Penna. R. R. Co., 203 Fed. Repr. 193.

OPINION BY MR. JUSTICE BROWN, July 1, 1914:

In 1889 the plaintiff below leased several acres of land, in the City of Philadelphia, for the purpose of carrying on his business as a truck gardener. He raised all kinds of vegetables, some under sash for the early market. In 1904 the Pennsylvania Railroad Company established a place about four hundred yards from his truck garden, for the purpose of cleaning its locomotives. These were cleaned by the use of compressed air driven through the boiler tubes. As a consequence of this proc-

ess of cleaning, smoke, soot, ashes, cinders and greasy substances were blown out of the stacks of the locomotives and settled on appellant's premises, ruining his plants and vegetables and destroying his business. In this action he recovered a verdict of $5,500 for the injuries which he sustained, but defendant's motion for judgment non obstante veredicto was allowed on the ground that the testimony of the witness called by the plaintiff as an expert to show that the locomotives of the defendant could have been cleaned without any resultant injury to the plaintiff was insufficient to sustain his charge of negligence. On this appeal the narrow question is whether the court below correctly so held in denying plaintiff judgment on the verdict.

The witness upon whose testimony the plaintiff relied as sufficient to satisfy the jury that the defendant could have adopted means for cleaning the tubes in the boilers of its locomotives which would have prevented the deposits of soot, ashes and other injurious materials upon his premises, was J. H. Whitham. On his preliminary examination this witness testified that he was an engineer, having graduated from the United States Naval Academy; that he had followed his profession for thirty-five years and had been a consulting engineer since 1891; that he had devoted himself almost exclusively to the study of power and combustion and had experience in doing away with the evils of soot, gas and smoke; that this experience included the installation of apparatus which prevented the escape of smoke or caused the distribution of it through a zone so large that it did no local injury and that the deposits of soot on premises adjoining or near those upon which boilers are cleaned can be avoided by the use of scrapers instead of blowers, and by washing the smoke to remove injurious impurities. While the witness admitted that he had not had experience with locomotive boilers, he at the same time said there was no difference between locomotive boilers and any other boilers in regard to soot, gas and smoke.

His testimony as to this was as follows: "Q. Will you tell us whether there is any difference between locomotive engines or boilers and any other boilers in regard to the soot and gas and smoke? A. No, sir. Except that the locomotive has a shorter stack, and the smoke hugs the lower grade closer than a stationary plant with a tall chimney. Q. Then exactly what could be done with one could be done with the other; is that true? A. Yes, sir. Q. Does the mere fact that a locomotive boiler is on wheels make any difference from any ordinary stationary boiler? A. No, sir. Both boilers burn fuel, both have to have a draft to burn the fuel and a grate to burn the fuel on. Both have to have water in an enclosed reservoir. Both have to have surface for preserving heat. Both sustain pressure and both operate engines. Q. Do both have tubes? A. Yes, sir. Q. Of the same character? A. Of the same character." It may be here noted that the foregoing testimony was not contradicted by Alfred W. Gibbs, the chief mechanical engineer of the defendant company, the only witness whom it called.

Before he was called as a witness Whitham had inspected the property of the plaintiff and the yard of the defendant in which its locomotive boilers were cleaned, and, when asked whether in his judgment anything reasonably practicable and in accordance with actual experiments could have been done to have saved the plaintiff from the injuries which he suffered through the emission of smoke, soot and greasy substances from the locomotive of the defendant, he answered in the affirmative, and then proceeded to testify as follows: "Q. In your opinion, could anything be done to eliminate the damage testified there? I might state, you not being present, briefly, that the testimony is that great and serious damage has been done to the growing of vegetation, lettuce, cauliflower, beets, celery, spinach, parsley, of the plaintiff by reason of a heavy deposit of an oily, greasy, black substance that settles on the vegetation, falling when the wind comes from the direction of these yards, as de-

scribed by the witnesses, as being like snow, killing the vegetation, and when it did not kill it, settled on it, that this substance, when it was attempted to be washed off or removed, kind of smears like grease. In your opinion, could anything be done which is not being done by the defendant in this case, which is something reasonable, practicable and according to demonstrated experiments, to obviate the nuisance? A. Yes, sir. Q. What could be done? A. The tubes of the boiler could be brushed out instead of being blown out with an air blast or steam blast. That is a custom which has prevailed ever since we have had steam boilers. It is over seventy years old. It was followed by the railroads in the early days. It is followed in stationary plants to-day, largely in plants which are under my control. It is the most effective way of cleaning a boiler tube that is known. Even the air blast or steam blast only partially cleans the tube, but the brush that sweeps the tubes has got to clean them from end to end. It takes longer to operate with a brush than it does with a steam jet or a blast, and for that reason, to save time and expense of cleaning, these practices have come into use.......Q. Would or would not that be more effective in cleaning the tubes than compressed air? A. It is more effective. Compressed air or steam, either one of them, is only partially effective, and this absolutely cleans the tubes, removes everything. Q. Could that be used on all the tubes of a locomotive boiler? A. Yes, sir.......Q. Is there any other system in use to avoid nuisance and damage by gas and soot than the cleaning with a brush? A. Yes, sir. In a great many industries, where the gas and dirt and dust would be local, that is overcome by distributing them at a high elevation so that the air currents will take them and dispose of them over a large territory, thereby not localizing them at any one spot. Suppose, for instance, you had noxious fumes, such as they have in smelting of metals, that is destructive of vegetation, the custom and practice is to have a very tall chimney, sometimes four

hundred feet high, and distribute those noxious fumes or acids out into a large high zone, and they will be distributed by the air currents so that they do not hurt any one particular spot. Again, right along the river, in Camden, in one of the plants I was connected with, the manufacture of phosphates, and the odor of phosphates was disagreeable to the neighborhood, particularly on a heavy day, and we had to put a tall flue up and conduct these fumes up and distribute them through a larger zone. The same was the case where they were recovering iron and lead from old cans. They had a chimney about twenty feet high, and as they burned the solder off from the cans they burned any material left in the cans, such as fish or vegetable matter, and that made a very disagreeable oily smelling gas that went into the dwellings nearby, and that is overcome entirely by putting in a chimney about a hundred feet high so those gases would be distributed at a high elevation. Q. Was that actually done? A. That was actually done, and is followed to-day. Q. Would the same be true of soot? A. The same is true of soot. You would not eliminate the soot by cleaning a boiler in that manner, but you would distribute the soot through a large zone so it would not be localized on any one spot. Q. How would you treat a plant of this kind? How would it be done in the case of a locomotive? A. In the case of a locomotive you could have a stack which rested on a structure or frame work, and run your locomotive right under that chimney, let the chimney go up two hundred feet, and not come down to touch the locomotive, to just clear it, and run the chimney of your locomotive right under that stack, put a flexible hood connecting the two, and then clean the tubes by your air blast in the same manner, having at the base of this stack a fan to induce a draft to expel all the dust and air that you are driving through your boiler tubes into the air at high velocity instead of letting it go out fifteen feet high into the air. When it gets out of the chimney at that high elevation it strikes the air cur-

rent. Of course, this soot and ash will ultimately drop, but they go through a large zone and are spread and diffused so they are not localized and do not injure any particular spot. That would be a very simple apparatus and very inexpensive. Q. In your opinion, that could be done and the property of the plaintiff here not injured? A. It would not be injured. It would carry further than his property. Q. Would any other property in the neighborhood be injured to any appreciable extent? A. No, sir; because instead of being localized on the spot, it would be diffused through a wide territory. Q. Would any portion of this deposit drop back on account of the height of the stack? A. No, sir. The fan inducing the draft at the base of the stack would prevent that. It would expel the dust and air up that stack at a high velocity."

The foregoing testimony, which we have quoted at length for the proper consideration of the question before us, was deemed insufficient by the learned court below to sustain the verdict returned for the plaintiff, because it was not based upon experience and knowledge of the witness derived from the operation of railroads or locomotives. To this reason for holding his testimony insufficient we cannot assent. He was uncontradicted in his statement that what could be done to prevent the escape of smoke, soot and other injurious substances from a stationary engine boiler when being cleaned could be done to prevent their escape from the boiler of a locomotive when being cleaned, and he then proceeded, not merely with a theory of his own for the avoidance of the injuries suffered by the plaintiff, but distinctly stated that by one of the methods suggested by him, the matter of which the plaintiff complained had been avoided in industrial and manufacturing establishments. He specifically referred to one of these—a phosphate plant in Camden. The competency of this witness ought not to be doubted, and his testimony was sufficient to lead the

jury to the conclusion that the defendant had not exercised proper care under the circumstances.

In support of the judgment of the court below it is argued that the defendant cannot be held liable to the plaintiff, because it appeared that the means which it had adopted to clean the boiler tubes were those in general use by other railroad companies. In view of the testimony as to the practicability of adopting other means for cleaning the boilers by which such injuries as were sustained by the appellant may be avoided, the doctrine of general usage, contended for by counsel for appellee, is not to be applied. To apply it in the present case would mean that though the defendant could have adopted means for the prevention of injuries to others in cleaning its locomotives in its yard, it was not bound to adopt them until they had been adopted by other railroad companies. It is to be remembered that the complaint of the appellant does not grow out of the actual operation of the locomotives, but out of what resulted from preparing them for operation—on property owned by the defendant company. It had a right to use the property for that purpose, but, under the competent testimony in the case, believed by the jury, only in obedience to the rule sic utere tuo ut alienum non lædas; and not to have so used it was found by the jury to have been negligence, for the consequences of which the defendant must answer to the plaintiff.

In further support of the judgment appealed from we have been referred to a number of cases involving the liability of employers to injured employees, in which the test of negligence in methods, machinery and appliances is the ordinary usage of the business. This rule has no application in the case at bar, for, as was properly said by RICE, president judge, in Sproson v. Philadelphia & Reading Railway Company, 54 Pa. Sup. Ct. 30: "These cases rest on a principle which is not involved in a case where no contract relation existed between the parties, and where the party aggrieved could do nothing to pro-

tect himself against the injury complained of, but which turns on the obligation of one owner of property conducting a lawful business thereon to so conduct it as not to inflict substantial injury upon his neighbor which it has been demonstrated, by actual experience under the same or substantially similar conditions, it is reasonably practicable to avoid." In the Spronson Case the Superior Court had before it practically the same question that is raised on this appeal, the same witness—Whitham—having testified to the practicability of adopting means for the prevention of the escape of soot, dust, cinders and gases from a yard in which locomotives were stored, cleaned and stoked.

No error was committed in submitting this case to the jury, and plaintiff is entitled to judgment on the verdict. The judgment entered for the defendant is, therefore, reversed, and the record remitted that plaintiff may have judgment.